IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

MARK DELANE WARD,

        Petitioner,

v.                                                    CIVIL ACTION  NO. 3:12-07928

MIKE CLARK, Administrator,
Western Regional Jail;

        Respondent.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Petitioner Mark Delane Ward's Objections (ECF No. 7) to the Magistrate's Proposed Findings and Recommendations (ECF No. 6). For the reasons stated below, Petitioner's Objections (ECF No. 7) are **DENIED**, and the Magistrate's Proposed Findings and Recommendations (ECF No. 6) are **ADOPTED in full**. Additionally, the Court **DENIES** Mr. Ward's three motions for miscellaneous relief (ECF Nos. 10, 11, 12).

### Statement of Facts

Mr. Ward was arrested on November 30, 2011, pursuant to an outstanding warrant for second-degree sexual assault. Mr. Ward made an initial appearance before a Cabell County magistrate judge, and a preliminary hearing was scheduled for December 9, 2011. Because he was unable to post bond, he was detained at Western Regional Jail. Upon arriving for the preliminary hearing, according to Mr. Ward, he was told that "I had been indicted and my case was dismissed," and so the preliminary hearing was canceled. Pet. at 2, ECF No. 1. He was returned to Western Regional Jail pending trial.

On November 19, 2012, Mr. Ward filed a *pro se* Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241. ECF No. 1 (hereinafter "Petition" or "Pet."). Mr. Ward raises four grounds for relief. First, he argues that he was improperly denied his preliminary hearing under West Virginia Rule of Criminal Procedure 5(c), because he cannot be indicted after the preliminary hearing has been scheduled. *Id.* at 6. He claims that "if I had competent representation I would have been released a long time ago[.] I also had evidence I wanted submitted at that preliminary hearing and wasn't able to do so," which allegedly violated his Sixth Amendment right to counsel. *Id.* at 7. Second, Mr. Ward argues that the merge order[1] entered by the Cabell County Circuit Court "invaded the jurisdiction of the magistrate court," in violation of West Virginia Constitution Article VIII, § 6 and Article III, § 4. *Id.* Third, Mr. Ward argues that the record is unclear as to what date he was indicted on, and that he should have been released from custody when his case was dismissed. *Id.* Fourth, he argues that he "asked the Courts to challenge the indictment under West Virginia Rule of Criminal Procedure 6(b)1, 2," which was denied, and "[a]ny evidence I've gotten from the courts have been police reports[.] I haven't received any sworn testimony from the state[']s witness to be presented to the grand jury violating W Va Code 52-2-8." *Id.* at 8. He requests that he be released from custody and that his case be dismissed. He also requests that the Court expunge DNA testing that occurred on March 15, 2012.

Magistrate Judge Cheryl A. Eifert issued Proposed Findings and Recommendations ("PF&R") on December 18, 2012, recommending that Mr. Ward's Petition be dismissed. ECF No. 6. The PF&R explained that the federal court should abstain from involvement in this state case because all three prongs of the Fourth Circuit's *Martin Marietta* test were met. *See Martin*

---

[1] The circuit judge entered a merge order on December 9, 2011, merging Magistrate Case 11F-1678 and the bond set therein with Indictment 11-F-443. ECF No. 1 at 14. Other documents refer to this order as a "merger order," and this opinion uses the two terms interchangeably.

*Marietta Corp. v. Maryland Comm'n on Human Relations,* 38 F.3d 1392 (4th Cir. 1994). Even if federal abstention was not appropriate, the magistrate found that Mr. Ward would not be entitled to relief because his underlying legal arguments regarding the preliminary hearing and merge order were unpersuasive. The magistrate also explained that the discrepancy in the date of his indictment was due to clerical delay and did not impact his case, that Ward could still possibly receive his grand jury testimony prior to trial, and that there were no grounds for the magistrate to inquire into the sufficiency of the indictment. Furthermore, the federal court did not have the power to expunge the DNA test.

Mr. Ward timely filed objections to the PF&R. ECF No. 7 ("Objections"). He argues in these objections that the *Martin Marietta* test does not favor abstention, "mainly [as] to the third prong." Objections at 1. Furthermore, he objects to the magistrate's interpretation of West Virginia Rule of Criminal Procedure 5(c), and points to the Initial Appearance Rights Statement, form SCA-M312-1, in support of his right to a preliminary hearing. *Id.* at 1-2. Mr. Ward also argues that the state magistrate set bond in his case, but that only the circuit court had the power to do so based on the recitation of rights found in the form. *Id.* at 2-3. He additionally claims that his appearance in circuit court 20 days after his initial appearance violated the Fourteenth Amendment. *Id.* at 3. He states that the merge order was a violation of law, and that although the circuit court stated there was no hearing, "a hearing had to have been held to enter the merger order." *Id.* Additionally, he argues that because his case was dismissed, his continued detention constitutes an unlawful arrest. *Id.* Furthermore, he claims that he asked to challenge the indictment on February 15, 2012, his request was denied, and he "believe[s] this hearing never took place." *Id.* at 6. He again claims that he did not receive requested sworn testimony, and asks for his DNA testing to be expunged.

In Section I, the Court will briefly discuss the standard of review applicable to the PF&R. In Section II, the Court will address abstention under the *Martin Marietta* test. In Sections III through VII, the Court will discuss Mr. Ward's four grounds for his Petition, including his objections to the magistrate's treatment of those grounds. In Section VIII, the Court will address arguments raised in Mr. Ward's Objections but not in his Petition. In Section IX, the Court will discuss Mr. Ward's three miscellaneous motions, filed subsequent to his objections. Lastly, in Section X, the Court will address the certificate of appealability.

## I.   Standard of Review

This Court's review of the magistrate's proposed findings and recommendations to which Petitioner objects is de novo. 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."). Therefore, this Court will review de novo the magistrate's determination that the *Martin Marietta* test favors abstention, and the magistrate's determination regarding the four grounds underlying Mr. Ward's Petition.

## II.   Abstention Pursuant to the *Martin Marietta* test

The U.S. Supreme Court explained in *Younger v. Harris* that federal courts should not intervene in state criminal proceedings unless certain extraordinary circumstances are present. 401 U.S. 37 (1971). As elaborated by the Fourth Circuit, "federal courts should abstain from the decision of constitutional challenges to state action, however meritorious the complaint may be, 'whenever [the] federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests.'" *Cinema Blue of Charlotte, Inc. v. Gilchrist*,

887 F.2d 49, 52 (4th Cir. 1989) (quoting *Haw. Hous. Auth. v. Midkiff,* 467 U.S. 229, 237-38 (1984)). Furthermore, "[i]n *Younger* and its progeny, the Supreme Court generally has found abstention appropriate if the following three-pronged test is met: 1) there are ongoing state judicial proceedings; 2) the proceedings implicate important state interests; and 3) there is an adequate opportunity to raise federal claims in the state proceedings." *Martin Marietta*, 38 F.3d at 1396 (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982)).[2] These three prongs together are known as the *Martin Marietta* test.

Mr. Ward argues in his objections that the *Martin Marietta* test does not favor abstention, "mainly [as] to the third prong." Objections at 1. After reviewing this determination de novo, this Court agrees with the magistrate, and finds that the *Martin Marietta* test is met—including as to the third prong—and this Court should therefore not intervene in Mr. Ward's ongoing state court proceedings. The first prong is met because there are indeed ongoing state judicial proceedings against Mr. Ward. *See* Docket Sheet, Case No. 11-F-443, Cabell County Circuit Court (case opened Dec. 6, 2011). As for the second prong—implication of important state interests—the Fourth Circuit has held that states have a significant interest in preventing others from violating their criminal laws. *Nivens v. Gilchrist ("Nivens I")*, 319 F.3d 151, 154 (4th Cir. 2003) (citation omitted). Furthermore, another significant state interest is the "efficient operation of [the state's] criminal justice system." *Id.* (quoting *Cooper v. Oklahoma,* 517 U.S. 348, 367 (1996)). Therefore, the second prong is met in this case.

---

[2] *See also Nivens v. Gilchrist ("Nivens II")*, 444 F.3d 237, 241 (4th Cir. 2006) ("Absent a few extraordinary exceptions, *Younger* mandates that a federal court abstain from exercising jurisdiction and interfering in a state criminal proceeding if (1) there is an ongoing state judicial proceeding brought prior to substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides adequate opportunity to raise constitutional challenges.") (citation and footnote omitted).

For the third prong, the Court considers whether Mr. Ward has an adequate opportunity to raise federal claims in the state criminal proceedings. The Fourth Circuit has noted that "ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights." *Gilliam v. Foster*, 75 F.3d 881, 904 (4th Cir. 1996) (quoting *Kugler v. Helfant,* 421 U.S. 117, 124 (1975)) (stating that one exception to this general rule, not applicable to the instant case, is when a petitioner is arguing a violation of the Fifth Amendment's Double Jeopardy Clause). An *opportunity* to raise federal claims on the state level must not be confused with *achieving success* on those federal claims. Indeed, "[a]bstention does not suddenly become improper simply because Appellants lost on the merits in the state court" or because an adverse ruling in state court is anticipated. *Nivens v. Gilchrist ("Nivens II")*, 444 F.3d 237, 243 (4th Cir. 2006) (citing *Nivens I,* 319 F.3d at 158). Mr. Ward noted in his Petition that he filed for a Writ of Mandamus in the Supreme Court of Appeals of West Virginia in April 2012. Pet. at 2-3. The state court refused Mr. Ward's filing. Regardless of the state court's rejection of his filing, Mr. Ward appears to have had a fair opportunity to bring his federal claims in state court. Therefore, the Court finds that all three prongs of the *Martin Marietta* test have been met in this case.

When all three prongs of the *Martin Marietta* test are satisfied, a federal court may nonetheless intervene "only where (1) 'there is a showing of bad faith or harassment by state officials responsible for the prosecution'; (2) 'the state law to be applied in the criminal proceeding is flagrantly and patently violative of express constitutional prohibitions'; or (3) 'other extraordinary circumstances' exist that present a threat of immediate and irreparable injury." *Nivens II*, 444 F.3d at 241 (quoting *Kugler*, 421 U.S. at 124). There is no indication in

the pending Petition or Objections that there has been any bad faith or harassment.[3] Also, there is no indication that the applicable state law in this case is "flagrantly and patently violative of express constitutional prohibitions." As for "extraordinary circumstances" creating "a threat of immediate and irreparable injury," the Fourth Circuit has held that "the cost, anxiety, and inconvenience" of criminal proceedings is not sufficient for intervention. *Id.* at 241 (quoting *Younger,* 401 U.S. at 46). This Court has not found any applicable exceptions, and so the Court will abstain from involvement in Mr. Ward's pending state criminal proceedings.

### III.  Preliminary Hearing and Indictment

Even if the *Martin Marietta* test favored intervention, however, Mr. Ward would not prevail on his Petition because the merits of his arguments are unpersuasive. In his Petition, Mr. Ward argued that he was improperly denied his preliminary hearing under West Virginia Rule of Criminal Procedure 5(c). He claims that "if I had competent representation I would have been released a long time ago[.] I also had evidence I wanted submitted at that preliminary hearing and wasn't able to do so," which allegedly violated his Sixth Amendment right to counsel. Pet. at 7. Mr. Ward objects to the magistrate's interpretation of West Virginia Rule of Criminal Procedure 5(c), and points to the Initial Appearance Rights Statement, form SCA-M312-1, in support of his right to a preliminary hearing.

---

[3] Mr. Ward first mentions potential bad faith in his motion for miscellaneous relief, discussed in Section IX. ECF Nos. 10, 11, 12. For example, in one motion, he states that the circuit court ordered a psychiatric evaluation; when the test was administered, Mr. Ward requested that his attorney be present, and the individuals administering the exam refused. ECF No. 10 at 1-2. Mr. Ward now wants that exam to be expunged. He states "I didn't I believe [sic] the Circuit Court[']s reasoning for psyce [sic] evaluation is to change and m[a]nipulate more documents to their advantage." *Id*. at 2. Mr. Ward also states that "false waivers are justifying this . . . malicious prosecution." *Id.* at 3. *See also* ECF Nos. 11, 12 (alleging falsity of exam report, malicious prosecution and misconduct of court). These claims—not raised in the Petition or the Objections and not directly relevant to the merge order and preliminary hearing—are not sufficient for finding bad faith or harassment apart from Mr. Ward's general dissatisfaction with his incarceration. The Court also notes that Mr. Ward has filed a malicious prosecution case which is still pending. *See* No. 3:12-cv-6186 (S.D. W. Va. filed Oct. 3, 2012).

West Virginia Rule of Criminal Procedure 5(c) discusses preliminary hearings (also called preliminary examinations), and states that "[i]f the offense is to be presented for indictment, a defendant is entitled to a preliminary examination, unless waived." The Rule subsequently elaborates on the details of this requirement in part as follows:

> If the defendant does not waive the preliminary examination, the magistrate shall schedule a preliminary examination. Such examination shall be held within a reasonable time but in any event not later than 10 days following the initial appearance if the defendant is in custody and no later than 20 days if the defendant is not in custody; provided, however, that the preliminary examination shall not be held if the defendant is indicted or if an information against the defendant is filed in circuit court before the date set for the preliminary examination.

W. Va. R. Crim. P. 5(c).

West Virginia courts have interpreted Rule 5 to mean that a preliminary hearing is not required when the indictment has been returned against the defendant prior to the *actual scheduled date* of the preliminary hearing. For example, the Supreme Court of Appeals of West Virginia in *State v. Hutcheson* discussed Rule 5(c) and noted the court's "holdings that the return of an indictment dispenses with the necessity of a preliminary hearing."[4] 352 S.E.2d 143, 148 (W. Va. 1986) (citing *State ex rel. Rowe v. Ferguson,* 268 S.E.2d 45 (W. Va. 1980); *State ex rel. Spadafore v. Fox,* 186 S.E.2d 833 (W. Va. 1972); *State v. White,* 280 S.E.2d 114 (W. Va. 1981)). Similarly, under Rule 5, "the preliminary hearing shall not be held if the defendant is indicted or if an information is filed against the defendant in circuit court before the date of the preliminary hearing." *Peyatt v. Kopp*, 428 S.E.2d 535, 537 (W. Va. 1993). The Rule's preliminary hearing requirement, coupled with exceptions, is consistent with the Federal and State Constitutions,

---

[4] The Court points out that Rule 5 became effective on October 1, 1981, and was amended in 1993, 1995, and 1996. The only difference that this Court has found between the current portion of Rule 5(c) as quoted above and the version as quoted in *State v. Hutcheson* is the substitution of "the defendant" for "he" in one clause and the addition of a comma. The Court does not believe that these changes to Rule 5(c) upset the applicability of this case to the instant situation.

neither of which grant a right for defendants to have a preliminary hearing. *Id.* at 537 (citing Syl.

Pt. 1, *Rowe,* 268 S.E.2d 45; Syl. Pt. 1, *Gibson v. McKenzie,* 259 S.E.2d 616 (W. Va. 1979)).

In *State ex rel. Rowe v. Ferguson,* the defendants claimed that under West Virginia Code

§ 62-1-8,[5] they were entitled to a preliminary hearing because their offense was to be presented

to a grand jury. The court disagreed with this interpretation, explaining that the defendants'

argument "would necessitate our reading W. Va. Code, 62-1-8, out of context with its related

statutes, and would thus violate recognized rules of statutory construction which require us to

read statutes relating to the same subject in pari materia." 268 S.E.2d at 48 (citations omitted).

The Court also stated that:

> Where the State proceeds under W. Va. Code, 62-1-1, et seq., to arrest the
> accused for an offense which must be brought before the grand jury, the defendant
> is entitled to a preliminary hearing under W. Va. Code, 62-1-8 (1965). If,
> however, the State elects to indict him without a preliminary hearing or before
> one can be held, the preliminary hearing is not required.

Syl. Pt. 3, *Id.* Mr. Ward argues in his Objections that § 62-1-8 was preempted by Rule

5(c). Objections at 5. Even if this were true, the case in nonetheless instructive to understanding

the right to a hearing, and does not upset the Court's interpretation of Mr. Ward's right to a

preliminary hearing. This Court believes that the magistrate's treatment of § 62-1-8 and Rule

5(c) in the PF&R is correct.

Mr. Ward also points to the Initial Appearance Rights Statement, form SCA-M312-1,

revised in September 2011, which states that "[t]he Magistrate has informed me that, since I have

been charged with a felony, I have the right to a preliminary hearing for a determination of

---

[5] This statute states in pertinent part that:

> If the offense is to be presented for indictment, the preliminary examination shall
> be conducted by a justice of the county in which the offense was committed
> within a reasonable time after the defendant is arrested, unless the defendant
> waives examination.

W. Va. Code § 62-1-8.

whether any felony charge(s) should be bound over for possible presentation to a grand jury." In the instant case, the grand jury indicted Mr. Ward after the date for his preliminary hearing was set, but before that preliminary hearing actually took place. The hearing was set for 10 days after his initial appearance, but the grand jury returned the indictment before the hearing actually occurred, thus making it unnecessary for the court to hold a preliminary hearing, regardless of the terms of the form. As explained above, this is proper under federal and state law, including under Rule 5(c), and so Mr. Ward would not succeed on this argument even if the Court chose not to abstain from intervention in his state case.

Furthermore, it is worth noting that an accused has no right to be present at a grand jury hearing. *State v. Justice*, 44 S.E.2d 859, 863 (W. Va. 1947). A grand jury issues an indictment based on its own independent finding of probable cause, and it is well-settled that grand jury hearings can be ex parte, without the accused present. Furthermore, although a preliminary hearing is one method for determining probable cause, an ex parte grand jury hearing is an equally-sufficient means of making the probable cause determination. *See Gerstein v. Pugh*, 420 U.S. 103, 117 n.19, 123 (1975) (holding that "the Constitution does not require an adversary determination of probable cause," "[t]here is no single preferred pretrial procedure" for determining probable cause, and that an indictment "conclusively determines the existence of probable cause."). Therefore, Mr. Ward had no right to be present before the grand jury, to have counsel present on his behalf, or to present evidence to the grand jury.

Furthermore, Mr. Ward attempted to challenge the validity of the indictment based on Rule 6(b)(1) and (2), which states at follows:

6(b) Objections to grand jury and grand jurors.
(1) Challenges. The prosecuting attorney or a defendant who has been held to answer in the circuit court may challenge the array of jurors on the ground that the grand jury was not selected, drawn, or summoned in accordance with law, and

> may challenge an individual juror on the ground that the juror is not legally qualified. Challenges shall be made before the administration of the oath to the jurors and shall be tried by the circuit court.
>
> (2) Motion to dismiss.  A motion to dismiss the indictment may be based on objections to the array or on the lack of legal qualifications of an individual juror, if not previously determined upon challenge. An indictment shall not be dismissed on the ground that one or more members of the grand jury were not legally qualified if it appears from the record kept pursuant to subdivision (c) of this rule that 12 or more jurors, after deducting the number not legally qualified, concurred in finding the indictment.

Also, he states that he asked to challenge the indictment, his request was denied, and he "believe[s] this hearing never took place." Objections at 6.  It is unclear what Mr. Ward means when he states that his request on February 15, 2012 to challenge the indictment on these grounds was denied.[6] Also, because there is no information from Mr. Ward regarding his specific objections to the grand jury or specific jurors, this Court cannot find that there has been a violation of Rule 6(b)(1) or (2). Therefore, Mr. Ward's claims about the preliminary hearing and indictment would not succeed on the merits.

## IV.   Merge Order

Mr. Ward argues in his Petition that the merge order entered by the Cabell County Circuit Court "invaded the jurisdiction of the magistrate court," in violation of West Virginia Constitution Article VIII, § 6 and Article III, § 4. The circuit judge entered a merge order on December 9, 2011, merging Magistrate Case 11F-1678 and the bond set therein with Indictment 11-F-443. This order was proper and in accordance with the respective jurisdictions of the magistrate court and circuit court.

---

[6] There is no docket entry for that date in his Cabell County Circuit Court case.

West Virginia Constitution Article III, § 4 does not lend any support to Mr. Ward's argument that the merge order or his continued detention is invalid.[7] Furthermore, Article VIII, § 6 supports a finding that the circuit court did not infringe on the state magistrate's jurisdiction. This Section states in pertinent part that "[c]ircuit courts shall have control of all proceedings before magistrate courts by mandamus, prohibition and certiorari," "[c]ircuit courts shall have original and general jurisdiction . . . of proceedings in habeas corpus," and "[c]ircuit courts shall also have such other jurisdiction, authority or power, original or appellate or concurrent, as may be prescribed by law." While circuit courts have original and general jurisdiction over crimes and misdemeanors, W. Va. Code § 51-2-2, the jurisdiction of magistrates expressly is limited to, *inter alia*, "misdemeanor offenses committed in the county" and "conduct[ing] preliminary examinations on warrants charging felonies committed within the county," W. Va. Code § 50-2-3. Therefore, the State Constitution does not support any argument that the magistrate's jurisdiction was infringed upon. The Supreme Court of Appeals of West Virginia has also explained that the magistrate court has jurisdiction over, *inter alia*, misdemeanors and preliminary examinations for felony offenses. *State v. Satterfield*, 387 S.E.2d 832, 833 n.3 (W. Va. 1989) (quoting W. Va. Code § 50-2-3). However, only the circuit court has jurisdiction over felony offenses after the preliminary examination stage. *See id.* It was therefore proper for the magistrate case to be transferred and merged into a circuit court case after the indictment was issued.

In his objections, Mr. Ward states that the merge order was a violation of law, and that although the circuit court denies that a hearing took place, "a hearing had to have been held to

---

[7] "The privilege of the writ of habeas corpus shall not be suspended. No person shall be held to answer for treason, felony or other crime, not cognizable by a justice, unless on presentment or indictment of a grand jury. No bill of attainder, ex post facto law, or law impairing the obligation of a contract, shall be passed. "W. Va. Const. Art. III, § 4.

enter the merger order." Objections at 3. According to the docket sheet for Circuit Court Case No. 11-F-443, no hearing was held on December 9, 2011, and the merge order was simply entered on that date without a hearing. This procedure was proper. Furthermore, the Court notes that Mr. Ward had no right to contest the merge order at a hearing. Mr. Ward was indicted by the grand jury for second-degree sexual assault (a felony) and intimidation of a witness (a misdemeanor). ECF 1 at 15. Therefore, the magistrate's jurisdiction over Mr. Ward's case ended with the indictment, and the magistrate's case was properly merged with the case stemming from the felony indictment at that point.

Mr. Ward argues that because his initial magistrate case was dismissed, his continued detention constitutes an unlawful arrest. The docket sheet for Magistrate Case No. 11-F-1678 states that the case was "dis[missed] per state- matter has been indicted by the Cabell County grand jury." However, Mr. Ward did not have a right to be released in a merger situation like this one. The magistrate's case was only "dismissed" in the sense that the magistrate could no longer exercise jurisdiction over Mr. Ward's case once the grand jury issued a felony indictment, although the magistrate's case and the indictment both stemmed from the same crime—sexual assault. Once the indictment was issued, it was necessary to merge the magistrate's case into a case before the circuit court, in order to respect the distinct jurisdictions of each court. It was not necessary for Mr. Ward to be released from custody in that situation. Therefore, Mr. Ward's objections to the merge order would not succeed if this court reached the merits of his arguments.

### V.  Date of Indictment

Mr. Ward argues in his Petition that the record is unclear as to what date he was indicted on. The docket sheet for his Cabell County case (No. 11-F-443) lists his indictment in an entry

dated December 6, 2011, while the face of the indictment itself states a filing date of December 5, 2011. Just as the Magistrate explained, a plausible explanation for this date difference is that the indictment was issued on December 5, but there was a delay in filing the indictment in the system until December 6. There is no indication that this discrepancy in dates brings into question the indictment or suggests foul play. Therefore, the difference in dates does not justify Mr. Ward's release or dismissal of his case.

## VI.   Receipt of Evidence

Mr. Ward additionally takes issue with the sorts of evidence he has received. Specifically, "[a]ny evidence I've gotten from the courts have been police reports[.] I haven't received any sworn testimony from the state[']s witness to be presented to the grand jury violating W Va Code 52-2-8." Pet. at 8. In his objections, Mr. Ward again states that he has not received requested sworn testimony, and suggests that this violates West Virginia Code § 52-2-2 and West Virginia Constitution Article III, § 4.

West Virginia Code § 52-2-2 involves petit juries, and so is not applicable here. Also, as explored above, West Virginia Constitution Article III, § 4 does not support this argument. West Virginia Code § 52-2-8 states that:

> At least twelve of the grand jurors must concur in finding or making an indictment or presentment. They may make a presentment or find an indictment upon the information of two or more of their own body, and when a presentment or indictment is so made, or on the testimony of witnesses called on by the grand jury, or sent to it by the court, the names of the grand jurors giving the information, or of the witnesses, shall be written at the foot of the presentment or indictment.

The statute does not support a right to grand jury testimony. According to West Virginia Rule of Criminal Procedure 6, some disclosure of grand jury transcripts is allowed:

> Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made:

(ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury

W. Va. R. Crim. P. 6(e)(3)(C). Therefore, it is in the circuit court's discretion whether to release grand jury materials to a defendant who wishes to challenge the indictment. Additionally, "[e]xcept for willful, intentional fraud the law of this State does not permit the court to go behind an indictment to inquire into the evidence considered by the grand jury, either to determine its legality or its sufficiency." *Justice v. Ballard*, No. 11-0321, 2011 WL 8199945, at \*21 (W. Va. Nov. 15, 2011) (unpublished decision) (quoting Syl., *Barker v. Fox,* 238 S.E.2d 235 (W. Va. 1977)). There is no indication the indictment in this case was subject to fraud.

Rule 26.2 provides for the right to grand jury testimony of witnesses after the witness testifies at the trial:

After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the state or the defendant and the defendant's attorney, as the case may be, to produce for the examination and use of the moving party any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified.

W. Va. R. Crim. P. 26.2(a). Mr. Ward's criminal trial has not yet occurred, and so disclosure pursuant to Rule 26.2(a) is not yet required.

## VII. Expunging DNA Testing

Mr. Ward requests the Court to expunge DNA testing. In his Petition, he claims that the testing was unlawful, but offers no explanation why. In his objections, Mr. Ward states that he asked for paperwork to sign before the testing, but his attorney and other individuals explained there was no paperwork; he then refused to complete the testing, and the testing was forcefully performed. He also states that the testing occurred on March 15, 2012, but that the testing was not approved until March 28, 2012. The docket sheet does list a notice of a hearing for March 15,

and the order granting the DNA swab on March 28.  Resolution of this claim is unnecessary because the Court is not intervening in his state case. Furthermore, Mr. Ward would not be prevented from presenting such a claim in state court.

## VIII. Other Arguments

Mr. Ward's objections to the PF&R raise additional grounds for habeas relief not addressed in the Petition. For example, Mr. Ward points out that the state magistrate set bond in his case, but that only the circuit court had the power to do so. He additionally argues that his appearance in circuit court 20 days after his initial appearance was a violation of the Fourteenth Amendment. These arguments were not raised in his initial Petition, and so the Court will not address the merits of these arguments.

## IX. Motions to Stay, to Expunge Evaluation, and for Other Relief

Mr. Ward has also filed a motion requesting various relief. ECF No. 10. He asks for this Court to stay his circuit court proceedings before Judge Ferguson, pursuant to 28 U.S.C. § 2251(a)(1).[8] Because this Court accepts the magistrate's recommendation that the habeas corpus petition be dismissed, the Court now denies Mr. Ward's request to stay the circuit court proceedings.

---

[8] 28 U.S.C. § 2251(a)(1) states that:

> A justice or judge of the United States before whom a habeas corpus proceeding is pending, may, before final judgment or after final judgment of discharge, or pending appeal, stay any proceeding against the person detained in any State court or by or under the authority of any State for any matter involved in the habeas corpus proceeding.

Additionally, § 2251(b) states that:

> After the granting of such a stay, any such proceeding in any State court or by or under the authority of any State shall be void. If no stay is granted, any such proceeding shall be as valid as if no habeas corpus proceedings or appeal were pending.

Mr. Ward also requests in that motion that the Court expunge a court-ordered psychiatric evaluation. According to the docket sheet, the circuit court did order initial forensic examinations to determine competency or criminal responsibility or both. Case No. 11-F-443, Cabell County Circuit Court, Jan. 31, 2013. He additionally notes that he "asked for a fast and speedy trial on Oct 1, 2012 and Oct 23, 2012 and was denied months ago." He is also "concerned" that he has not "received any paperwork under USCA 2243 any motions for good cause by the circuit court asking for additional time to review my case." Also, he alleges there have been "false waivers" and malicious prosecution. In reading the claims asserted in this motion other than the request for a stay, the Court is sympathetic to the many challenges that pro se litigants face in completing filings without the assistance of an attorney. Other than the request for a stay, however, these other arguments in the motion must be raised in a proper habeas petition in order for the Court to consider them. Asserting them in a miscellaneous motion rather than the original petition does not suffice. Therefore, the Court will not consider them now.[9]

Mr. Ward filed a second motion for miscellaneous relief on March 25, 2013. ECF No. 11. He states therein that he has not received proposed findings and recommendations regarding another civil case he has filed (3:12-cv-6186), and the Court reminds Mr. Ward that the case is pending, and that a court will address the filings in due course. Mr. Ward also asks for the Court to expunge the psychiatric examination, complains of false information concerning a plea, and alleges that his lawyers have not protected his rights. Again, the Court will not consider those arguments, because they must be brought up in a proper habeas petition in order for the Court to rule on them. Mr. Ward states that § 2241 petitions must be reviewed within 25 days, and voices

---

[9] The Court had difficulty understanding some of petitioner's arguments. Again being sympathetic to the difficulties litigants face in composing pro se filings, the Court nonetheless encourages litigants to make their arguments as clearly as possible.

dissatisfaction with the amount of time in which the Court reviewed his Petition. However, the Court is aware of no such deadline. Mr. Ward again requests this Court to stay the circuit court proceedings, but for the reasons explained above, this request is denied. Mr. Ward additionally requests to be brought before the Court, but Mr. Ward does not have the right to any hearing before the Court on this Petition. Therefore, the Court denies this motion.

Mr. Ward filed an additional motion for relief on March 26, 2013. ECF No. 12. He claims that the circuit court is "prosecuting" him for his religious beliefs and is engaging in malicious prosecution; states there was a 25-day time limit to review his Petition; requests a stay; asks for the psychiatric evaluation to be expunged; requests to be brought before the federal court; and states that he has not received proposed findings and recommendations regarding the other civil case he has filed (3:12-cv-6186). The Court again denies Mr. Ward's motion to stay, because the Court is now ruling on the pending Petition. As stated above, the Court is aware of no expired time limit for considering this Petition, and Mr. Ward does not have a right to appear before this Court on the Petition. This Court again reminds Mr. Ward that the other civil case is pending, and the court will address the filings in that case in due course. The remaining arguments must be brought up in a proper filing to be considered, and this miscellaneous motion does not suffice. Therefore, the Court denies this motion.

## X.  Certificate of Appealability

The Court additionally has considered whether to grant a certificate of appealability. *See* 28 U.S.C. § 2253(c). A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this Court is debatable or wrong and that any dispositive procedural ruling is likewise debatable.

18

*Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001). The Court concludes that the governing standard is not satisfied in this instance. Accordingly, the Court **DENIES** a certificate of appealability.

**Conclusion**

For the reasons stated above, Petitioner's Objections (ECF No. 7) are **DENIED**, and the Magistrate's Proposed Findings and Recommendations (ECF No. 6) are **ADOPTED in full**. Additionally, the Court **DENIES** Mr. Ward's three motions for miscellaneous relief (ECF Nos. 10, 11, 12).

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        April 9, 2013

ROBERT C. CHAMBERS, CHIEF JUDGE